All right, Ms. Gassman, you're up. Good morning. May it please the Court, Kayla Gassman for the appellant Saul Garcia-Sanchez. This case is about the offense-level enhancements under the Illegal Reentry Sentencing Guideline 201.2, which depend on the length of a sentence imposed for a prior felony conviction. The specific question before the Court is whether that enhancement must be based on a single sentence imposed for a single felony conviction or whether multiple convictions and sentences can be combined to assess a higher enhancement. To illustrate, in 2011, Mr. Garcia was convicted of three counts of burglary in California in the same case. His final sentence was 16 months on one count and eight months on the remaining two counts, all consecutive. My argument is that he should have... I got confused about this. Was it eight and eight or just one eight? It was eight and eight. At one point, the probation officer, I think, just made a mistake and only counted one eight, but it was eight and eight, which is really not relevant because the enhancement would be the same either way. So he received those consecutive sentences. So my argument is he should have received a six-level enhancement based on the 16-month individual sentence and not the eight-level enhancement based on the aggregate 32-month sentence for all three convictions. I want to discuss three things that dictate that result in the guidelines, the text of 201.2, the commentary to 201.2, as well as both the text and commentary to the criminal history guideline 4A1.2. First, turning to the text of 201.2, the plain language of that guideline uses singular language when describing predicates for the offense-level enhancements. The enhancement that we're dealing with here is for a conviction and sentence occurring after a person's first order of deportation. The guideline provides you apply the greatest applicable enhancement and then provides different levels of possible enhancement based on the length of a sentence imposed for, quote, a conviction for a felony offense. That language means what it says. The singular term indicates that each enhancement should be based on a single sentence imposed for a single felony conviction, not the combination of multiple sentences and convictions. The commentary to 201.2 supports that reading. The commentary adopts very specific parts of 4A1.2, the criminal history guideline. Specifically, it adopts subsection B in note 2 from 4A1.2 and provides that the sentence-imposed definition in 201.2 means the same thing as the sentence of imprisonment definition from 4A1.2B. So under those provisions, the sentence imposed under 201.2 means a sentence a person was actually incarcerated on that was not suspended and means the maximum sentence imposed as opposed to the length of a sentence actually served. But none of the provisions of 4A1.2 that are adopted by 201.2 provide for aggregating sentences. Instead, the only part of 4A1.2 that provides for aggregating multiple sentences is the single sentence rule of 4A1.2A. But that is a distinct term that is part of the different definition of prior sentence, which is a criminal history-specific term that is not adopted by 201.2. And of course, the normal canons of construction do apply to the guidelines, including the principle that the expression of one thing does not mean that other things that are not listed are not included. So here, the fact that 201.2 expressly adopts only 4A1.2B means that it does not adopt 4A1.2A, which is a different definition of a different term with a different purpose. In fact, the text and commentary to 4A1.2 also support that the single sentence rule does not apply to calculating offense-level enhancements, but instead is a tool for calculating criminal history points. Three things about that guideline are important. Again, it's text, the commentary, and as well as the purpose of the single sentence rule itself. So starting with the text of the single sentence rule, if we look to the text of that rule in 4A1.2A, it provides that if consecutive sentences were imposed, you use the aggregate term of imprisonment, quote, for purposes of applying 4A1.1A, B, and C. And those are the provisions for assessing criminal history points for all of a person's prior sentences. So the text of the single sentence rule itself tells us what the scope of the rule is. It is a tool for calculating criminal history points. Is it really all that clear? I mean, the Fourth Circuit went the opposite way. We have a published opinion from our court that says it's far from clear. I mean, don't we really come down to the rule of lenity here? The rule of lenity certainly is important in this case. I do maintain, of course, that the text and the canons of construction and the commentary to the guidelines make the language of 201.2 clear. But at the very least, it is ambiguous whether the single sentence rule applies to calculating offense-level enhancements. And where there are multiple plausible interpretations of a guideline, the court is required to apply the rule of lenity and resolve any doubts in favor of the defendant, which here would require interpreting 201.2 to require the offense-level enhancements to be based on a single sentence imposed for a single conviction and not the combination of multiple sentences. But I do think it's clear. I think all that the court said in Ponce-Flores, which Your Honor is alluding to, is that it wasn't plain for purposes of plain error review. But that, I think, is a different question than— They said it cannot be identified purely by an uncomplicated resort to the language of the guidelines. I agree that that's what the court said, but it made no assessment of the merits of the question. So that panel did not indicate that— They didn't resolve it. I'm just saying they said it was not uncomplicated and therefore not clear error. And then the Fourth Circuit disagreed with your position. All I'm saying is, to me, it's not that clear. And at bottom, shouldn't we just say the rule of lenity applies here? That certainly would—I would be fine with that result. I think that is, at the very least, that is required. I believe also the Fourth Circuit's decision, while it did say aggregation was appropriate under a prior version of 201.2, it doesn't discuss lenity, although the opinion does acknowledge ambiguity in the guidelines. It simply doesn't mention the rule of lenity. So I think, at the very least, the Fourth Circuit's decision would support application of the rule of lenity in this case. Although I do think it's important to note that— I think it is more clear, perhaps, than the Fourth Circuit acknowledged in its opinion, because even the commentary to 4A.1.2 acknowledges that there is a distinction between the rules that apply to calculating criminal history points and the rules that apply to sentences that are used as predicates for offense-level enhancements under other guidelines. Specifically, there's a note, note 3 to 4A.1.2, provides that even if multiple sentences are combined and treated as one sentence for criminal history purposes, if one of those sentences is to be used as a predicate under another guideline, it must count individually. So essentially, that note says they might be considered together for criminal history purposes, but the individual sentences must count separately for offense-level enhancements under other guidelines. So that principle should apply equally to 201.2, which obviously does provide for offense-level enhancements, not criminal history points. I think it's important to think about the purpose of the single-sentence rule in judging the language of the guidelines, which is really to recognize that a person should not get separate points for multiple sentences imposed as part of the same case, so as not to overstate their criminal past or their risk of recidivism in the context of making an overall assessment of their entire criminal history. It is already, the purpose of the criminal history calculation combines all of a person's, all of their prior sentences into one criminal history score that then corresponds to a category. But the 201.2 enhancements are different, they are more specific. It's not, the 201.2 enhancements do not assess a person's entire criminal history for a specific time period. Instead, each enhancement is based on a single sentence for a single conviction. For example, there's one possible enhancement for conviction and sentence prior to the first deportation, and one possible enhancement for conviction and sentence after the first deportation. But the enhancements don't add up all of the sentences for each of those time periods. Instead the enhancement looks at the longest sentence prior to the first deportation, and the longest sentence after the first deportation. It's not adding up all of those sentences. Whereas the single sentence rule is a tool in the context of combining all of the person's prior sentences, and is a tool to assist in doing that. We have already addressed the Four Circuit's decision a little bit, but I do think if you look at the Four Circuit's decision, it gives insufficient weight to the text and commentary of 2L1.2 itself, and simply fails to appreciate the distinction between the offense-level enhancements and criminal history points, and sometimes appears to confuse those two things in a way that makes that case not particularly persuasive. In addition to what I discussed with Judge Owen, which is that the Four Circuit doesn't discuss the rule of lenity at all, even though it does acknowledge ambiguity in the guidelines. So I think at the very least, the Four Circuit's decision would support applying lenity in this case. I think if there are no further questions, I have reserved time for rebuttal. All right. Thank you. Thank you. We'll hear from the government. Thank you. May it please the Court, Loretta Berry for the United States. I'd like to start my argument by referring the Court to page 116 of the record, which is the 2013 California conviction. This is a single case, Your Honors, where Garcia engaged in criminal conduct that resulted in a three-count conviction, and the California court imposed a consecutive sentence, 32 months total, based upon the severity of his conduct. This was Garcia's third sentencing on these three counts. So the issue before this court is to how to treat the same— What do you mean it was his third sentencing? I don't understand. Yes, Your Honor. If you look at paragraph 30 of the PSR, he was initially convicted in 2011. He received a 365-day probationary period. He was sentenced again in 2012. He received a 16-month sentence on count two. He was sentenced a final time in 2013, and that's what we're here looking at today, Your Honor. And that's when he finally received the consecutive sentence. So the issue is how to treat this 2013 conviction with consecutive sentences under the revised guideline 201.2. And the commission tells us how to do that in the amendment, in the amendment 802 to 201.2. And it specifically says that for subsections B-2 and B-3 of 201.2, you measure the seriousness of the prior conviction based upon the severity of the sentence imposed. And the sentence imposed approach, and I quote from the reason for the amendment, is consistent with how the criminal history is generally scored in Chapter 4 of the Guidelines Manual. That's straight out of the reason for the amendment. So in this case, to account for the severity of his prior conduct, the sentences must be aggregated under the single-sentence rule of Chapter 4. That is consistent with the Fourth Circuit's approach in Martinez-Varela, which this Court found persuasive. I confess I have not looked at Amendment 802. Did the commission cite specific cases that that amendment was designed to address? Well, Your Honor, the commission did not cite specific cases. I presume that's because this was the very first time they were addressing it. This was the major overhaul to 201.2 where they were advocating for eliminating the categorical approach, making things simpler, less complicated, doing it in a broader manner. But the commission did specifically at pages 146 to 148, and in the quote I just read where they specifically referenced that this sentence imposed approach is consistent with how the criminal history is generally scored in Chapter 4 of the Guidelines. They're telling us that is an example of how the seriousness of these prior convictions are to be measured. And it's consistent with the Fourth Circuit's approach that the Guidelines are to be read in a cohesive, integrated manner instead of picked apart by piecemeal, and that's also in 1B1.11 of the Guidelines. If you start technically dissecting each little piece of B3 that thwarts the intent of the commission, which was, as I said, to eliminate the categorical approach and account for prior conduct in a broader, more proportionate manner. So in this case, the district court did all it could do. At the sentencing hearing at page 77 and 79, the probation officer actually told the court that she had contacted the Sentencing Commission on this exact scenario, on this exact issue, and was advised that the aggregated sentencing rule applies. Sister circuits have consistently cross-referenced 201.1 and 4A1.2, and that is replete throughout case law and the Guidelines. The lenity rule is inapplicable in this case, Your Honors, because that only applies when the text, the structure, the purpose, and the intent of the Guideline is so ambiguous that we have to guess at the commission's intent. And we don't have to guess at the commission's intent in this case, Your Honors. They specifically are referring us to Chapter 4 of the Guidelines Manual using a sentence-imposed approach. And the only way we know how severe the sentence was is by looking at the fact that it was imposed consecutively. It was a harsher sentence. If there are no further questions, I respectfully request that the court affirm the judgment. How often does it happen that you know of where the probation officer, somebody, reaches out to the Sentencing Commission? Presumably to get clarity about something which is not clear. Well, I can presume that the probation officer, I don't know if she did it on her own. I highly doubt that, Your Honor. I'm assuming that the court perhaps told her to do it. That's not clear on the transcript. But in this era of this completely revision of 201.2 where things are still, you know, there's not a lot of case law out there yet, it would make sense to do that. And I think the court did the prudent thing in discussing that at sentencing. Well, that was just a curiosity question because, you know, you and your office see more of these than we do. You know, we get them like this, but I guess, speaking only for myself, none of it's clear. So, you know, we get more of these sentencing appeals. We really struggle with them trying to, you know, figure these out. You know, we know the district courts worked hard trying to figure it out. And, like, instead of getting clearer, you know, I mean, there's a difference between is it ambiguous or not from it's just not, you know, not. I'm not sure how the sentencing commission could have said it any better, though, Your Honor, because they said a conviction for a felony offense. And I think that's the easiest wording they could have used because I'm not sure how they could have accounted for all of these different counts. They would have had to say these were all on the same day, but if you had some that were running consecutive and they were on different days, it would be really hard to write that account for the 2013, the 2012. So I think that the way it's written, after the first deportation, the defendant engaged in criminal conduct. That's what we have before we even get to a conviction. He engaged in criminal conduct, and that's exactly what he did on August 3, 2011. He went on a spree of these burglaries, and he engaged in criminal conduct. That's very clear. That resulted in a conviction, and that's what we have, one conviction, three counts. It's no different than a wire fraud with conspiracy counts that are joined. Thank you, Your Honor. All right. Thank you. I appreciate that. All right. Back to you, Ms. Gassman. I know you mentioned the rule of lenity, but, you know, we don't apply the rule of lenity that often, I guess sort of for good reason, so to speak. It's often, in many cases, sort of a last gasp, so to speak. So it does worry me a little bit. Not to benefit it, but, you know, applying it because we do infrequently, you know, resort to the rule of lenity as a basis, you know, for our decision, as opposed to grappling with whatever we have in front of us and going to best shot. So you're up on rebuttal. The government says, you know, it's their single sentence rules. You know, we should go with it. I understand that concern, Judge Stewart. Certainly it is true that the court does not often apply the rule of lenity, but, of course, the court has applied the rule of lenity to the guidelines in at least two cases, Postillo's Pena and Skilling, which was overruled on other grounds. But, you know, I think looking at those cases is illustrative for when the rule of lenity does apply, which is when the court has grappled with what the issues are, has applied all of the typical tools of constructing language. We are looking at the plain text, looking at the commentary, perhaps looking at the reasons for the amendment that the government pointed out. If none of those things are results in clarity, then it would be perfectly appropriate to apply the rule of lenity. Do you agree we should look at Amendment 802? I've looked at that amendment. Honestly, I don't think it sheds any particular light. It says, recognizes that the offense-level enhancement, the new offense-level enhancements are consistent with Chapter 4, but as I pointed out in my briefing in here today, I think not applying the single sentence rule to offense-level enhancements is perfectly consistent with Chapter 4. The single sentence rule itself says that it is a tool for calculating criminal history points. The commentary to Chapter 4 makes a distinction between the rules that apply to criminal history points and the rules that apply to calculating offense-level enhancements. So I think it's entirely consistent with Chapter 4 to recognize that the single sentence rule is a criminal history-specific tool and does not apply to offense-level enhancements. So honestly, I think the amendment just does not add clarity if the court is not already convinced that it's clear. I did want to briefly address the engaged in criminal conduct language because that is very clearly addressed at a different issue, which is there's an enhancement for a conviction and sentence prior to the first deportation and a separate possible enhancement for conviction and sentence after the first deportation. The engaged in criminal conduct language is in the enhancement for the after deportation enhancement to clarify that it cannot apply to someone who perhaps engaged in the criminal conduct before the first deportation but then for whatever reason is not convicted until after the first deportation. So something that splits the deportation would not count under the enhancement for the conviction after the first order of deportation. And I think if you look at the guideline itself and the reasons for the amendment, it's clear that that's the purpose of that language. The sentencing commission hotline issue, there is a hotline that you can call. I think it is not the first time I've seen that happen, but the hotline has a very clear disclaimer that it does not represent the position of the commission and it's not binding, so obviously there's not any sort of interpretation from the commission itself. And I think if you look at the sentencing transcript, you'll see I think the district court also thought it was ambiguous because the district court initially agreed with the defense position that you would look at the single sentence and then through discussion and the probation officer saying that she had reached out to this hotline, the court obviously changed her mind and ruled the other way. But if you actually look at the transcript as a whole, I think it supports that at the very least the language is ambiguous and that it would be appropriate for the court to apply the rule of lenity in this case and resolve that doubt in favor of the defendant. If the court has no further questions, I would ask that you remand for resentencing using a six-level enhancement. Thank you. All right, thank you to both counsel for your brief.